Chester **VOCKIE** and Anna
Vockie, his wife

v.

**GENERAL MOTORS CORPORATION,
CHEVROLET DIVISION.**

Civ. A. No. 73-2035.

United States District Court,
E. D. Pennsylvania.

Feb. 20, 1975.

Thomas B. Rutter, Philadelphia, Pa., for plaintiffs.

George J. Lavin, Jr., Philadelphia, for defendant.

## MEMORANDUM

GORBEY, District Judge.

This case was tried before this court and a jury of seven.[1] After seven days of trial, the jury returned a verdict for the defendant. Plaintiff has filed a motion with this court for a new trial.

The trial was complex, lengthy and hard-fought. Plaintiff claimed injuries which were allegedly the result of the negligence and/or defective product of the defendant. The theory of plaintiff's case was that the engine mounts in the plaintiff's car, a 1969 Chevrolet Impala, were negligently designed and that the engine mounts were defective and unreasonably dangerous to the user. Plaintiff's legal theories were common law negligence and strict liability and tort, pursuant to § 402A of the Restatement of Torts 2d.

On December 24, 1971, the plaintiff was driving his 1969 Chevrolet Impala four door sedan in an easterly direction in New Castle Township, Pennsylvania, on Legislative Route 53073. Upon approaching a curve on said road, the plaintiff's car, which was being driven by the plaintiff at the time, went out of control, left the highway, hit a telephone pole and rolled over several times. During the course of this incident, plaintiff sustained serious injuries.

It was alleged by the plaintiff that this accident was the result of the negligent design of, and a defective condition in, the engine mounts in the plaintiff's vehicle. The evidence presented showed that the engine mounts installed in plaintiff's vehicle were such a design that after a certain period of use, the rubber in the engine mount could fail allowing the engine to lift due to the reactive forces generated by the interaction between the engine and the drive train of the vehicle in propelling the vehicle, and that when the engine lifts, it tends to rotate causing the "secondary effect" of having the throttle linkage "hang-up" on the spark plug wire bracket, holding the throttle open and causing the car to accelerate uncontrollably. Plaintiff's asserted grounds for a new trial involve evidentiary rulings made by this court during the course of the trial.

Prior to a discussion of the individual rulings, it should be borne in mind what the essential factual question presented in this case was. Here the crucial question to be answered was not whether such failure and "secondary effect" *could* happen, but whether such failure and "secondary effect" did in fact occur in this case. It was admitted by defendant's expert that such failure and "secondary effect" could happen. The testimony in the case was directed mainly at the issue of how this particular engine mount failed and then under what conditions given the failure of the engine mounts could the "secondary effect" occur, and did such happen in the incident involved in this law suit. The defendant General Motors did not take a position that the engine mount failure and secondary effect could not occur. Their defense of the case was based on a position that under the circumstances of the facts in plaintiff's accident, either the engine mounts in question did not fail prior to the accident, or if they had failed, the requisite conditions to produce the secondary effect were not present, and that the accident was caused by the plaintiff's own negligence. With this in mind, we will deal with plaintiff's allegation of error seriatim.

Plaintiff alleges that it was error for the court to exclude defendant's response to plaintiff's interrogatory no. 27. Plaintiff's counsel made an offer of proof (N.T. 4.3–4.7) requesting that defendant's entire response to said interrogatory be admitted into evidence.

 Admissibility is not a fixed concept. First the relevance of the offered evidence must be considered. Rule 401

---

1. One of the original eight jurors was excused due to an injury.

of the new Federal Rules of Evidence [2] (P.L. 93–595, adopted Jan. 2, 1975, effective July 1, 1975) defines relevant evidence as follows:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

However, determination of admissibility does not stop with relevance. Rule 403 of the new Rules states:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ Here the offer of proof was for the entire answer to plaintiff's interrogatory no. 27, which covered many vehicle models other than the one involved in this law suit. This offer of proof was overly broad. The evidence in the case showed that the conditions under which the secondary effect could occur differed with each type of vehicle and equipment, thus the offer of the entire answer to interrogatory no. 27 contained irrelevant material whose potential for confusion and prejudice far outweighed any possible probative value.

■ In ruling on evidence, the court must consider an offer of proof in its entirety and is not required to break it down and rule on each individual element if offering counsel does not do so.[3] Wigmore on Evidence, § 17(b)(2), page 320. If some portion or aspect of the offer of proof is objectionable, the entire offer may be excluded. Encyclo-

pedia Brittanica v. Cowan, 142 Pa.Super. 534, 16 A.2d 433 (1940).

■■ Also, plaintiff argues that the recall campaign and notice is an admission by defendant which is relevant to the issue of the case. An admission is a voluntary acknowledgement made by a party of the existence of the truth of certain facts which are inconsistent with his claims in an action. 29 Am.Jur.2d, § 597. An admission is not of sufficient probative weight to be competent unless it is voluntary. 31A C.J.S. Evidence § 278. *See also* Jenkins, Pennsylvania Trial Evidence Handbook, § 8.5.

The proffered evidence revolved around the recall notice and campaign. This notice was issued pursuant to the mandate of the National Traffic and Motor Vehicle and Safety Act, 15 U.S.C. § 1402(a) which reads:

"Every manufacturer of motor vehicles or tires shall furnish notification of any defect in any motor vehicle or motor vehicle equipment produced by such manufacturer which he determines, in good faith, relates to motor vehicle safety, to the purchaser (where known to the manufacturer) of such motor vehicle or motor vehicle equipment, within a reasonable time after such manufacturer has discovered such defect."

Violation of this statute subjects manufacturers to penalties as provided by 15 U.S.C. § 1398(a) as follows:

"Whoever violates any provision of § 1397 of this title [requiring notice to be given pursuant to 15 U.S.C. § 1402] or any regulation issued thereunder, shall be subject to a civil penalty of not to exceed $1,000 for each such violation. Such violation of a provision of § 1397 of this title, or regulations issued thereunder, shall

---

2. While not yet binding, these rules offer a persuasive guide for the court.

3. This is especially so where, as here, both sides are represented by experienced and ex-tremely qualified counsel. To begin to assist one side in the presentation of its case would be unfair and inappropriate.

constitute a separate violation with respect to each motor vehicle or item of motor vehicle equipment or with respect to each failure or refusal to allow or perform an act required thereby, except that the maximum civil penalty shall not exceed $400,000 for any related series of violations."

The notice and recall in this case was performed pursuant to the mandate of this statute and in response to a letter from the National Highway Traffic Safety Administration (NHTSA) (N.T. 4–6).

In discussing statements made under a statutory duty, Professor Wigmore states:

"Admissions made under a *duty imposed by law* stand on a peculiar footing. It would seem that nothing in the principles governing admissions excludes them. But they may nevertheless come to be excluded on two other principles:

"(a) The statutes imposing such a duty usually require the statement in the shape of a *report to a public official, e.g.* a druggist's record of sale of poison, a corporation's report of assets, a common carrier's report of an injury done. In such cases the statute sometimes makes the communication confidential and expressly brings it under a privilege (§ 2377, infra). Without such express provision, the privilege might be implied, where policy obviously required it.

"(b) In criminal cases . . ." Wigmore on Evidence (Chadbourn Revision) § 1050(2).

■ There is a strong public policy in having such disclosures made. If such statements are admissible on a wholesale basis, manufacturers will be reluctant to come forth and make a full unqualified disclosure of any potential safety hazards which they discover. Manufacturers should not be inhibited in, or prejudiced by, a good faith effort to protect the public safety and comply with their statutory duty.[4] For this reason alone the recall should not be admitted into evidence. However, there is another perhaps more important reason for excluding such evidence. Such evidence has minimal probative value to the existence of a defect in a particular vehicle.

■ One Louisiana court has held that such recall notices are not admissible to prove that a particular automobile contained the defect towards which the recall was directed and that the fact of a defect in a particular vehicle was required to be proved by direct evidence. Landry v. Adam, La.App.1973, 282 So.2d 590. We agree[5] with the court in the Landry case where it stated at page 596:

"As to proof that the injury occurred because the product was defective at the time of the accident, the fact of a recall program is not relevant. The recall program at most indicates that some 1965 Pontiacs contained defective brake hoses, which proves nothing about the condition of Hilton's brake hose at the time of this accident. The danger in allowing the introduction of irrelevant evidence is that such evidence might be misconstrued as proof of some fact which the evidence does not in fact tend to prove. The [recall] letter cannot be used to make the transition from the general to the particular and to prove that this particu-

4. This holding is similar to the general rule regarding subsequent repairs where the public policy of encouraging such repairs to improve safety far outweighs the minimal probative value of such evidence.

5. Although we feel the court confuses the issue of relevance with weighing of relevance against possible prejudice and confusion as demonstrated by Rules 401 and 403 of the new Federal Rules of Evidence *(supra)*, we feel that the reasoning reaches the proper result.

lar 1965 Pontiac contained a defective brake hose. The fact of a defective brake hose in this particular automobile at the time of this accident must be proved by direct evidence."

In weighing these problems we hold that plaintiff's offer of defendant's answer to interrogatory no. 27 and the evidence of the recall campaign and notice was properly ruled inadmissible. In addition, plaintiff was allowed to cross-examine defendant's expert regarding the recall campaign and the recall letters were admitted into evidence at that time, thus curing plaintiff's objections.

Next plaintiff asserts that the court erred in not admitting the testimony of a General Motors expert witness in a prior unrelated court action. Again plaintiff misconceives the requirements for such evidence to be admissible. The fact that such testimony may qualify as an admission by the defendant does not make it admissible in the case at bar.

■ When asked by the court, plaintiff's counsel was unable to inform the court what type of vehicle was involved in the case in which the expert was testifying. The evidence in the case at bar showed clearly that different models with different engines, drive trains, and accessories produced differing results with respect to the conditions under which the "secondary effect" could occur. Counsel for the defendant maintained that the prior case dealt with a vehicle different from that of the vehicle in question in the case at bar. Since plaintiff could not refute defendant's assertion (N.T. 6–14, 6–15), we denied plaintiff's offer of proof. Plaintiff's counsel was permitted to inquire of the witness the extent of his knowledge regarding the testimony (N.T. 6–15 to 6–19).

In addition, plaintiff refers to Exhibit B attached to his motion for new trial, which is represented to be the "relevant portions of said testimony". This material nowhere discusses any specific mod-

el Chevrolet. What appears to be the critical question reads as follows:

"Question: What is the highest speed at which you have been able to obtain a momentary binding of the accelerator linkage in *any* vehicle you have tested, Chevrolet vehicle? Answer: Forty miles an hour." [Emphasis added]

Clearly what the highest result achieved in all models tested is not relevant to what could occur in the model vehicle in question in this suit. Accordingly, we hold that this evidence was properly excluded from the trial.

■ Next plaintiff asserts that it was error for this court to refuse admission into evidence plaintiff's Exhibit No. 20. Plaintiff's Exhibit No. 20 is the entire file of the National Highway Traffic Safety Administration with respect to the investigation by the United States government through the NHTSA into the failure of engine mounts on Chevrolet vehicles (N.T. 4–9). Plaintiff spends considerable time and effort arguing the authenticity of these records. However, this was never in question. Plaintiff urges that his Exhibit 20 was admissible pursuant to Rule 44 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1733(a). Rule 44 of the Federal Rules of Civil Procedure provides for authentication of official records providing that if such records are admissible "for any purpose" they may be authenticated pursuant to this Rule. Thus the question is are these records admissible given that they are authentic. 28 U.S.C. § 1733(a) provides as follows:

"Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept."

This provides that government records are admissible to prove the act or occurrence about which they were kept. But

in order for the records to be admissible in a particular case, such act or occurrence must be admissible. *Cf.* Colvin v. United States, 479 F.2d 998 (9th Cir. 1973) ; Michael v. John Hancock Mutual Life Ins. Co., 138 Colo. 450, 334 P.2d 1090 (1959). Plaintiff offered the entire file, the bulk of which is unrelated to the occurrence of the "secondary effect" in a vehicle such as the plaintiff was driving in this case. An unrestricted offer such as this is clearly overly broad and contains vast amounts of irrelevant and highly prejudicial material.

Plaintiff sought to introduce certain portions of plaintiff's Exhibit 20. Namely, a report prepared by General Testing Laboratories (GTL), concerning engine mount failures and a report by a NHTSA consultant dealing with engine mount failures on the 1967 through 1969 standard Chevrolet, Camaro, and Nova automobiles. Plaintiff first sought to use the GTL report on redirect examination of his expert, John A. Lapore. Plaintiff asked the following question (N.T. 4–191) :

"In preparing yourself to form an expert opinion in conclusion in connection with the ability of this engine to lift off of the mount under certain circumstances, did you have occasion to familiarize yourself with tests conducted by the General Testing Laboratory of Springfield, Virginia ?"

Defendant's objection to this question was sustained because plaintiff's counsel was leading his witness. Counsel did not attempt to restate the question.

Plaintiff next sought to use the GTL report and the NHTSA report in cross-examining defendant's expert Marvin Henckle (N.T. 6–37 to 6–58). The reports in question deal with similar occurrences in other vehicles. Evidence of similar incidents is not easily admitted to prove a specific occurrence in a specific vehicle (see discussion, *supra*, re : recall campaign). The posture of this case showed no reason to allow such evidence in this case. In addition to the testimony from plaintiff's experts, General Motors' expert had admitted that the engine mounts in question could fail and that under certain conditions the "secondary effect" could occur. In light of this testimony, evidence of similar occurrences is unnecessary, cumulative, and highly prejudicial. These factors far outweigh the probative value to this case of the reports in question. In addition, the reports dealt with many other vehicles other than the type involved in this case. As in the earlier discussion such evidence is overly broad and should not be admitted. Specifically, plaintiff was attempting to use the reports to impeach Mr. Henckle. The reports were not statements of Henckle or an admission by General Motors. The NHTSA report in this latter regard states on the first page as follows :

"General Motors Corporation has provided the National Highway Traffic Safety Administration (NHTSA) with three types of data pertaining to reported engine mount failures in the 1967–1969 standard Chevrolet, Camaro, and Nova automobiles." (Page 1 of Exhibit D attached to plaintiff's motion for new trial.)

The report contains no documents or statements by the defendant General Motors, it simply recites data regarding reports of incidents. In addition to the problems of over breadth and relevance discussed previously, there is another problem with this offer. In order to use said report as an admission, plaintiff must somehow link the data to the defendant. Plaintiff agrees (plaintiff's memorandum in support of his motion for new trial, P–10) that the documents in question must concern matters to which the recording official could have testified if called in person. Even if the author of the report in question were on the witness stand, he could not simply say "General Motors has reported." The source must be identified. Absent such a showing, data in the proffered report

cannot be used as an admission against the defendant General Motors. Plaintiff was allowed to question the witness on the extent of his knowledge of the underlying facts which were supplied to the government (N.T. 6–51 to 6–74). Since this witness had no present knowledge of the facts submitted, plaintiff's counsel was not permitted to question him further regarding facts which he could not remember. Thus plaintiff's counsel did not properly connect the data to defendant. Plaintiff's counsel never specifically offered any letters or documents of the defendant General Motors.[6] For these reasons we hold that these reports were properly excluded under the circumstances of this case.

Plaintiff's other objections regarding this court's limiting of the testimony of various witnesses are without merit. Such determinations are within the sound discretion of the trial judge. It appears that plaintiff's basic objection is this court's determination that relevant evidence is confined to evidence regarding vehicles of the same model and similarly equipped as that of the plaintiff's. Plaintiff would have us define the relevant scope of inquiry as all Chevrolet vehicles with engine mounts like those installed in the Vockie vehicle. However, as stated earlier, the principal question at issue in this case is—did the engine mounts in the Vockie vehicle separate, and if so, did a "secondary effect" occur and cause the accident in question. The facts that the engine mounts could separate and that defendant knew of designs which would not separate were not in dispute.[7] Thus, evidence that similar engine mounts on completely different vehicles

may separate was properly excluded for its potential for confusion and prejudice far outweighs whatever minimal probative value it may have. Accordingly, plaintiff's motion for a new trial is denied.

---

6. At one point in the trial (N.T. 4–8 to 4–9) plaintiff did state that such letters were contained in plaintiff's exhibit no. 20, but any such documents were never specifically offered into evidence except as part of plaintiff's exhibit no. 20, which we have held was properly excluded.

7. Defendant General Motors offered to stipulate as to availability of alternative design and there was ample evidence of other such designs existent prior to the manufacture of plaintiff's vehicle.