## Dunkle v. West Penn Power Co.

*Paul A. Tershel,* for plaintiffs.

*Clarence A. Crumrine,* for defendant West Penn Power Co.

*Herman C. Kimpel,* for additional defendant Radio Shack, a division of Tandy Corp.

TERPUTAC, *J.,* February 27, 1990 — The issue is whether the trial court properly excluded governmental safety standards which were promulgated and became effective subsequent to the sale of the product.

Plaintiffs, Dorothy Dunkle, administratrix of the estate of Jack H. Rizor, deceased; Dorothy Dunkle, in her own right; and Howard Rice, an individual, brought a civil suit against West Penn Power Company, a corporation, and Robert Charles Paxton Jr., defendants. The suit arose out of an accident occurring on September 23, 1983, when Jack H. Rizor was electrocuted and Howard Rice injured as they were

removing a citizens band antenna from the house rented by Robert Charles Paxton Jr. Tandy Corporation had manufactured the antenna. At the time of the accident West Penn owned the electrical power line and Paxton owned the CB antenna which was being removed. In this suit, West Penn brought Tandy into the case as an additional defendant.

Plaintiffs instituted a second suit against Tandy at no. 21 of 1985. In this suit Tandy joined as additional defendants both West Penn and Paxton. The court consolidated the two suits at no. 90 of 1984. Before trial began, plaintiffs entered judgment by default against Paxton.

On the strict liability aspect of the case, the jury returned a verdict in favor of Tandy. To the question, "Was the product of Tandy Corporation defective?" the jury answered "No." On the negligence aspect, the jury found that West Penn had been 15 percent negligent, Paxton 36 percent, and the plaintiffs 49 percent. It awarded $3,000 to the Rizor estate and $2,000 to Howard Rice.

After the motion for post-trial relief had been filed by plaintiffs, West Penn settled its case with them. West Penn has joined Tandy in opposing the motion.

The CB antenna had been purchased in the spring of 1977 or 1978. Tandy's motion in limine sought to exclude the Consumer Product Safety Commission safety standards, which had been published on June 29, 1978, to be effective September 26, 1978. During the trial, plaintiffs sought to introduce the safety standards both of 1978 and of 1982. Sustaining the objections of defendants, the trial court held that the safety standards were not admissible. For the reasons set forth, we will dismiss the motion for post-trial relief.

We have found no Pennsylvania cases on point. Even so, plaintiffs have cited *Matsko v. Harley-Davidson Motor Co.*, 325 Pa. Super. 452, 473 A.2d

155 (1984). There the Superior Court held that the trial court had not erred when it admitted into evidence the recall notice of the motorcycle. In so ruling, the court determined that the subsequent-repair rule, forbidding evidence of subsequent repairs in a negligence action, was inapplicable to a products liability case. Recall notices, issued after the accident, are distinguishable from subsequently promulgated standards. By its nature, the recall notice usually applies to defects existing at the time of the accident. Should the court allow evidence of subsequently promulgated standards, it would allow the jury to speculate that indeed the product was defective when it was sold.

In support of its contention that government regulations, which specify standards for products sold before the regulations had been promulgated, should not be admissible, defendant has cited several cases. In *Oberreuter v. Orion Industries*, 398 N.W.2d 206, 210, 211 (Iowa App. 1986), the trial court had sustained the defendant's motion in limine and excluded from evidence CPSC standards for CB antennas manufactured prior to the requirement that manufacturers and importers of CB base station antennas and outdoor television antennas provide warnings, instructions, and labels. Affirming the exclusion of the safety standards, the Court of Appeals for Iowa held that post-sale regulations were prejudicial and inadmissible. The court rejected plaintiff's contention that it should be allowed to demonstrate that the very existence of the subsequent regulations meant that an antenna without a warning was defective when sold to the plaintiff. And in *Smith v. Formica Corporation*, 439 So.2d 1194, 1200 (La. App. 1983), the court held that federal regulatory changes issued subsequently were inadmissible.

We are of the opinion that the ruling during trial was correct. Issues about the admissibility and ex-

clusion of evidence are vested within the discretion of the trial judge and will not be reversed unless an abuse of discretion is found. *Burch v. Sears, Roebuck and Co.,* 320 Pa. Super. 444, 455, 467 A.2d 615, 621 (1983). During trial plaintiffs were accorded every opportunity to demonstrate a defective product. In fact, the court allowed plaintiffs to introduce into evidence an actual CB antenna manufactured by Tandy after the antenna in issue had been manufactured; this antenna contained a warning which was mandated by CPSC standards excluded at trial.

If their reliance on *Matsko* does not hold, plaintiffs say as a matter of public policy the court should allow the admissibility of post-accident standards, for admitting them is more important than excluding them: the quest to make products safe is paramount. But to rivet our minds on allowing the evidence would foster a precept so unfair and so prejudicial as to be deprecated. It is not enough to show that better changes are possible. Substantial policy reasons militate against the admissibility of post-accident standards. First, data on safety may not be available to the manufacturer at the time the product is sold. Second, an unreasonable danger exists in that subsequently enacted regulations may create a retroactive duty of care owed at the time of the accident. *Cover v. Cohen,* 61 N.Y.2d 261, 461 N.E.2d 864, 868 (1984).

## ORDER

And now, February 27, 1990, the motion for post-trial relief filed by plaintiffs, Dorothy Dunkle, administratrix of the estate of Jack H. Rizor, deceased; Dorothy Dunkle, in her own right; and Howard Rice, an individual, is dismissed.

Upon praecipe, the prothonotary shall enter judgment in favor of the additional defendant, Radio Shack, a division of Tandy Corporation, and against plaintiffs.