**Bonda v. Point Marion Ford Sales Inc.**

C.P. of Allegheny County, no. GD 92-19884.

*Michael J. Colarusso,* for plaintiffs.
*Anthony J. Williott,* for defendants.

FRIEDMAN, *J.,* July 27, 2000—The defendants have appealed from this court's order dated December 7, 1999, denying their motion for post-trial relief, molding the verdict to include delay damages, deducting a credit to defendants for first-party wage loss benefits, and denying credit for other benefits. The net amount of the molded verdict in favor of plaintiff was $136,275.88.

This case arose from an incident involving a 1991 Ford F-150 truck which plaintiff had purchased from defendant Point Marion Ford Sales Inc. The truck had been manufactured by defendant Ford Motor Company. Plaintiff alleged in his complaint that within 10 days of the purchase, he began having "problems with the door latch mechanism on the driver's side door," (complaint ¶5), and that he returned the vehicle to Point Marion at least three times during the first month he owned the vehicle. (Complaint ¶6.) Plaintiff alleged that on the day of the accident in question, one month after purchasing the truck, while he was riding as a passenger in his car, "the passenger side door latch mechanism failed by opening unexpectedly, and plaintiff fell out of the vehicle, sustaining injuries and damages . . . ." (Complaint ¶7.) At trial, plaintiff pursued only a products liability claim against the defendants.[1] The factual issue for the jury was whether or not the defect in the lock caused the door to appear closed when the latch really was not engaged.

A jury trial was held before the undersigned, resulting in a verdict in favor of the plaintiff. Defendants, in their statement of matters complained of on appeal, raise 14

---

1. The complaint had contained counts of negligence, products liability, and breach of warranty against both of the defendants.

instances of error on the part of the court. We have condensed those items, somewhat, into the seven areas listed below:

"(1) The court's ruling that, because defendants had no other evidence of intoxication, the evidence of plaintiff's blood alcohol level was not admissible.

"(2) The court's rulings regarding various aspects of the testimony of plaintiff's expert, Howard Earnest, including the admissibility, extent and scope of his direct testimony and the limitation of cross-examination, as well as the rulings regarding defendants' expert.

"(3) The court's refusal to instruct the jury on assumption of the risk.

"(4) The court's refusal to allow defendants to read into evidence an excerpt of plaintiff's deposition in which he admitted that no physician had ever told him that he was disabled.

"(5) The court's allowing the recall notice into evidence. (Defendants contend that the Pennsylvania case law allowing evidence of a subsequent recall in a products liability case is not correct.)

"(6) The court's calculation of delay damages based on its conclusion that the writ of summons was 'original process' and that either party, not just plaintiff, could have placed the case at issue.

"(7) The court's ruling denying defendants a credit for disability benefits and the related ERISA issue."

The issue of the limitation of defendants' expert Fred Hoffmann's testimony was withdrawn. See defendants' brief in support of motion for post-trial relief, p. 20. The issue is therefore waived and we will not address it further herein.

## DISCUSSION

### 1. *Blood Alcohol Evidence Is Not Admissible To Show Intoxication Unless There Is Also Other, Objective, Evidence Suggestive of Intoxication, Such As Slurred Speech or an Unsteady Gait*

It is well-settled that under Pennsylvania law, in order for evidence of blood alcohol content to be admissible, other *objective* evidence of intoxication must be present:

"The theory behind allowing a blood alcohol level to be admitted into evidence in a civil case is that it is relevant circumstantial evidence relating to intoxication. However, *blood alcohol level alone may not be admitted for the purpose of proving intoxication.* There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted." *Ackerman v. Delmonico,* 336 Pa. Super. 569, 576, 486 A.2d 410, 414 (1984).

During oral argument on plaintiff's motion, defendants' counsel conceded that "a bare blood alcohol reading in and of itself probably does not go into evidence." (TT p. 10, 1. 23.) However, defendants could not point to any evidence *of intoxication* other than blood alcohol content. The record of the argument on plaintiff's motion in limine made to the trial court indicates that counsel for defendants could not identify *any* evidence he could present to the jury other than the blood alcohol test itself. The argument begins on page 4 of the transcript. The court specifically asked defendants' counsel what other evidence he had. (TT p. 10, 1. 8.) Defendants'

counsel alluded to the hearsay contents of the hospital records, the fact that plaintiff did not drive his own car, his need to urinate during the ride home, and his post-accident loss of consciousness and brief amnesia after the passenger side door flew open and he fell out of the car as it was going around a bend in the road. At the time of argument on plaintiff's motion in limine to exclude the evidence of plaintiff's blood alcohol, defendants said that plaintiff's decision not to drive was evidence of intoxication. This is hardly the case as there are many reasons why an owner of a motor vehicle would let someone else drive. The law of Pennsylvania describes objective evidence of *intoxication* by example: slurred speech, unsteady gait, etc. The other evidence alluded to by defendants in their brief in support of the motion for post-trial relief are not a basis for relief because they were not brought to the court's attention in a timely fashion, during the argument on plaintiff's motion.[2] It is well-settled that grounds not argued to the court are permanently waived.

Another reason, perhaps even more important, why the expert testimony on plaintiff's blood alcohol content was excluded was that when asked his ultimate opinion on plaintiff (as opposed to the statistical incidence of various alcohol impairments), defendants' expert said he did not know how plaintiff would have behaved. Defen-

2. The post-trial brief (p. 4) attempts to suggest that defendants had *evidence* that plaintiff engaged in horseplay, had difficulty closing the door, and intentionally opened the door. However, a careful reading of the brief reveals that defendants are really talking about possible inferences they wanted the jury to make from the *only* evidence defendants had, the blood alcohol content. The trial transcript reveals that defendants did *not* mention, for example, evidence of horseplay, at all.

dants' purpose in offering the excluded testimony could only have been to prejudice the jury as it had no probative value given the expert's inability to testify about anything other than statistics.

## 2. *The Court Did Not Abuse Its Discretion With Regard to the Testimony of Plaintiff's Expert on the Product Liability Issues*

At trial, defendant's counsel sought to cross-examine plaintiff's expert witness, Howard Earnest, regarding aspects of his report dealing with product liability issues, regardless of whether or not Earnest had been questioned on those issues during direct examination. (TT pp. 366-78.) Defendant's counsel argued that as long as something was contained in the expert's report, he should be able to question the expert about it, regardless of whether or not it had been brought out on direct examination.

The court disagreed, and only permitted defendants' counsel to cross-examine Earnest on matters actually brought out on direct examination. Even though a certain amount of leeway is routinely permitted for cross-examination, it is well-settled that the questions on cross must relate to the testimony given on direct. Defendants' objectionable questions would have gone well beyond the fair scope of direct and there was no abuse of discretion in refusing to require plaintiff's expert to answer them.

It should also be noted that well after *all* the testimony was concluded, during discussions regarding the charge to the jury, defendants moved the court to strike Earnest's entire testimony on the grounds that it was beyond the

scope of and contradictory to his report. (TT pp. 569-73.) We denied this motion, first because it was untimely (coming at the conclusion of all testimony in the case rather than during or immediately after Earnest's testimony), and second, because there was some doubt whether defendants' counsel had properly objected to Earnest's testimony, at the time it was given. Defendants' counsel contended that his objections were made during the discussion with the court about the scope of his cross-examination (discussed above), that he *did* object to the hypothetical at the time, and that he had not objected more strenuously during direct examination because he had thought at that time that he would have the opportunity for extensive cross-examination. However, this discussion with the court had taken place *after* Earnest's direct examination, by which time defendants' objections to the expert's direct testimony had already been waived. Even assuming that defendants' counsel did not simply forget to object at the proper time and that he in fact had a good faith belief about a matter he had not yet raised to the court (his ability to cross-examine a witness on matters covered by his report but not covered by his in-court testimony), there is no precedent to suggest that the argument, "I didn't think I would have to object," is a valid basis for appeal as defendants have argued. Again, denial of a belated motion to strike is not an abuse of discretion.

Regarding the proper degree of certainty for an expert's opinion, defendants' counsel submitted a case to the court in support of his position that a defense expert's opinion could be less certain than a plaintiff's expert's. *Neal by Neal v. Lu,* 365 Pa. Super. 464, 530 A.2d 103 (1987).

(TT pp. 478-79, 535-37.) We did not find the case persuasive, because on the issue of certainty it merely seemed to refer to there being no need for magic words. The Superior Court in *Neal* did observe that, although a plaintiff, upon whom the burden of proof rests, must prove causation with the appropriate certainty, "the defendant's case is usually nothing more than an attempt to rebut or discredit the plaintiff's case," and further stated that "[t]he defendant ordinarily need not prove, with certainty or otherwise, that he or she is innocent of the alleged wrongdoing." 365 Pa. Super. at 476, 530 A.2d at 109. However, this is clearly a reference to the fact that a defendant does not have the *burden* of proving his or her "innocence." It does not change the rule that an expert's opinion, even one for the defense, must be "reasonably certain."

### 3. *There Was Insufficient Evidence Upon Which a Jury Could Find Plaintiff Had Assumed the Risk Involved in the Instant Case. Therefore, That Issue Was Properly Not Submitted to the Jury*

We acknowledge that assumption of the risk may be a viable defense in products liability cases. However, the evidence presented to the jury was not sufficient to support a factual finding that plaintiff was aware of the risk that the passenger door could appear closed but be open, nor was there any evidence that he consciously disregarded that risk. The general principle of assumption of the risk as set forth in the Restatement (Second) of Torts at section 496A, is that "[a] plaintiff who voluntarily assumes a risk of harm arising from the negligent or reckless conduct of the defendant cannot recover for such harm."

Plaintiff's experience was that the driver's side door sometimes *failed to close.* The court refused to instruct the jury on assumption of the risk because there was *no* evidence that plaintiff knew that the door latches malfunctioned after they appeared to be *closed.* In particular, defendants offered *no* contrary evidence about plaintiff's difficulties with the lock on the driver's side. The available evidence shows only that plaintiff had experienced problems when trying to *close* the door, and therefore he was not aware of the risk in the instant situation: that the malfunctioning latch would *open* a door that he had closed successfully. In other words, plaintiff was lulled into a false sense of security by his previous experience with the driver's door, that it did not swing open once it had closed. Furthermore, there is *no* evidence that plaintiff had any idea that subfreezing temperatures caused the instant problem with the latches, as defendant Ford admittedly discovered before the recall.

The discussion of assumption of the risk centered around the Restatement (Second) of Torts section 496A and three Pennsylvania cases, *Kupetz v. Deere & Company Inc.,* 435 Pa. Super. 16, 644 A.2d 1213 (1994); *Robinson v. B.F. Goodrich Tire Co.,* 444 Pa. Super. 640, 664 A.2d 616 (1995); and *Jara v. Rexworks Inc.,* 718 A.2d 788 (Pa. Super. 1998) (in which, coincidentally, the undersigned was the trial judge).

The Restatement (Second) of Torts, in comments c(1) through c(4) to section 496A, outlines four types of assumption of the risk:

(1) Where "the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk."

(2) Where "the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances."

(3) Where "the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it."

(4) Where "the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is barred from recovery, not only by his implied consent to accept the risk, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own negligence was in part responsible." [3]

Comment c(4) describes the kind of assumption of the risk at issue here, "when the plaintiff unreasonably encounters a defect specifically known to him." *Robinson*, *supra*, states that before a plaintiff can be said to have assumed a particular risk, he must intelligently acquiesce in a *known* danger. In the instant case, plaintiff's efforts to get the driver's side lock fixed by taking the truck back to the dealer whenever the problem occurred, are undisputed evidence that he did *not* acquiesce in the danger related to the problem of which he was aware.

,

---

3. It should be noted that the Pennsylvania Supreme Court, in *Howell v. Clyde,* 533 Pa. 151, 620 A.2d 1107 (1993), held, inter alia, that Pennsylvania's comparative negligence statute removed this absolute bar to recovery of a plaintiff's contributory negligence.

### 4. *Plaintiff's Testimony Regarding What Opinions a Doctor Did or Did Not Relay To Him About His Condition Is Not Admissible for the Truth of the Doctor's Opinion and Was Therefore Properly Excluded by the Court*

Defendants wished to read into evidence an excerpt of plaintiff's deposition in which he admitted that no physician had ever told him that he was disabled. This evidence would serve only an improper purpose, allowing the jury to infer, *based solely on lay testimony,* that plaintiff was *not* disabled merely because no treating doctor had told plaintiff he *was* disabled. Furthermore, defendants' proffer was an improper attempt to prove an affirmative fact (*i.e.,* defendants' position that plaintiff was *not* disabled by his injury) by introducing only hearsay evidence that no one stated its opposite.

The fact of disability or non-disability is a matter for *expert* testimony, which plaintiff *did* provide. Plaintiff's *actual* physical condition is independent of his own lay knowledge of it.[4]

### 5. *The Court Correctly Followed Precedent and Admitted the Evidence of a Subsequent Recall*

Regarding the issue of whether or not evidence of a recall notice may be properly introduced into evidence in a products liability case, defendant's counsel argued, based upon Pennsylvania Rule of Evidence 407, that

---

4. This impropriety is made even more obvious if we consider the opposite situation. Suppose a *plaintiff* were trying to introduce as evidence of his disability the fact that no doctor had told him he was not disabled. A defendant would rightly be apoplectic if a court were to admit this non-event into evidence.

evidence of the post-accident recall should be excluded. He contended that the new rule created a split in Pennsylvania law on the issue. (TT p. 77.)

Pennsylvania Rule of Evidence 407 provides:

"When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible *to prove that the party who took the measures was negligent or engaged in culpable conduct* in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for impeachment or to prove other controverted matters, such as ownership, control, or feasibility of precautionary measures." (emphasis added)

Since a products liability case does not involve either negligence or culpable conduct, the exclusionary part of Rule 407 does not apply; the language of the rule is not inconsistent with the law allowing such evidence in cases such as the instant one.

The leading case on this question appears to be *Matsko v. Harley Davidson Motor Co. Inc.,* 325 Pa. Super. 452, 473 A.2d 155 (1984). *Duchess v. Langston Corp.,* 709 A.2d 410 (Pa. Super. 1998), is also useful. *Matsko* and *Duchess*, although decided prior to the enactment of the rules of evidence, are not inconsistent with Rule 407, and speak clearly to the issue here, in which the evidence of a recall was admitted in a *products liability* case, where neither negligence nor "culpable" conduct are an issue. Defendants' argument that those cases were decided before the enactment of the Rules of Evidence is without merit. The rules purport to codify prior case law, for the most part. Certainly, Rule 407 does not purport to change any pre-existing case law.

### 6. *The Court Correctly Calculated the Period to Which Delay Damages Would Apply*

Over defendants' objection, we allowed delay damages for a period which *included* the time between the issuance of the writ of summons and the filing of the complaint. This ruling was based upon Pa.R.C.P. 238(a)(2)(ii), which provides that "[d]amages for delay shall be awarded for the period of time . . . from a date one year after the date *original process* was first served in the action up to the date of the award, verdict or decision." We merely recognized that, in this case, the *writ* was the original process, not the complaint. See *e.g.,* Pa.R.C.P. 401, governing service of process, which states that "[o]riginal process shall be served within the Commonwealth within 30 days after the *issuance of the writ or the filing of the complaint.*" (emphasis added) See also, Black's Law Dictionary:

"Original process. That by which a judicial proceeding is instituted; process to compel the appearance of the defendant (*i.e.,* summons). Distinguished from 'mesne' process, which issues, during the progress of a suit, for some subordinate or collateral purpose; and from 'final' process, which is process of execution."

Defendants' contention that only a complaint can constitute "original process" for delay damage calculation is without merit.

As to the period prior to the placement of the case at issue, which defendants also contend should be excluded from the calculation of delay damages, it is no secret that *either* party may place the case at issue. See Allegheny County Local Rule 214(h), which provides in part that "[t]he prothonotary shall keep an issue docket and

shall enter cases therein when requested by *any of the parties.*" (emphasis added) The rule regarding delay damages does not excuse a defendant from payment if defendant as well as plaintiff could have moved the case along.

### 7. *Disability Benefits/ERISA Issue*

Defendants also wanted a credit for the disability payments plaintiff had received under his employers' ERISA plan. Defendants' contention was that the plan was not fully self-funded and therefore the ERISA pre-emption applies, permitting a credit against the verdict amount.

Both parties rely on *FMC Corp. v. Holliday,* 498 U.S. 52 (1990), but they disagree as to its meaning. Defendants contended that "ERISA pre-empts the PA Motor Vehicle Financial Responsibility Law in connection with ERISA plans that are *fully* self-funded." (Mr. Williott's emphasis) Plaintiff disagreed, saying that *FMC* is not limited to fully self-funded plans. Plaintiff cited several cases, from other circuits, in support of his position: *Thompson v. Talquin Building Products Co.,* 928 F.2d 649 (4th Cir. 1990); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga,* 801 F.2d 1157 (9th Cir. 1986), and *Brown v. Granatelli,* 897 F.2d 1351 (5th Cir. 1990).

The parties also disagreed as to who has the burden of proof for the issue at hand. The defendants argued that the burden of proof lies with the plan to prove that ERISA pre-emption applies here. Plaintiff argues that defendants have raised the affirmative defense of preclusion and that defendants thus have the burden.

After the jury verdict, in connection with his motion to mold the verdict, plaintiff adduced evidence on this

issue by affidavit, to the effect that the plan *was* self-funded fully. The court had ordered this procedure and had given defendants an opportunity to cross-examine the affiant, an opportunity they declined. Instead, defendants argued that the affidavit on its face was insufficient to eliminate the ERISA pre-emption. Defendants having waived the right to attack the affiant's credibility, the affidavit that the plan was self-funded is conclusive *and* sufficient. The court properly denied defendants a credit for these payments.

## CONCLUSION

The numerous instances of error which defendants complain of on appeal are all without merit. Defendants had an ample opportunity to present proper evidence to the jury. The fact that they failed in their attempts to introduce inadmissible evidence and to exclude proper testimony is not a basis to sustain their appeal. The post-trial motions regarding delay damages and credits for third party payments were also correctly decided.