Reginald EXUM, Appellant

v.

GENERAL ELECTRIC COMPANY.

No. 86–5061.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 12, 1986.
Decided May 29, 1987.

Leonard J. Koenick, Washington, D.C., for appellant.

Frank J. Martell, Rockville, Md., for appellee.

Before WALD, Chief Judge, MIKVA, Circuit Judge, and GESELL*, District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

Appellant Reginald Exum suffered first- and second-degree burns while using a french fryer designed and marketed by General Electric ("GE"). He sued the company under several theories, the most important of which for purposes of this appeal is negligent design. At the close of Exum's case, the trial court directed a ver-

* Of the United States District Court for the District of Columbia, sitting by designation pursu- ant to 28 U.S.C. § 292(a).

dict for General Electric. Exum contends in this appeal that the trial court erroneously excluded expert testimony and evidence of similar accidents. He also argues that the evidence he did adduce at trial was sufficient to send the case to the jury. Finally, he challenges the trial court's decision not to sanction General Electric for alleged recalcitrance in discovery. We affirm the trial court's decision not to sanction GE, but reverse its other rulings.

## I. BACKGROUND

Mr. Exum was 19 years old and a new employee at a Wendy's franchise on June 10, 1983, the date of the accident giving rise to this suit. One of Exum's duties was filtering the hot grease used in his employer's GE Model 811 french fryer (the "Model 811"). This task required Exum to lift a six-pound pan containing 15 pounds of grease at a temperature of 350 degrees and pour the grease through a paper cone filter into a second pan placed on the floor.

Exum is asthmatic and carries with him a pressurized asthma inhaler. As he poured the grease through the filter, the inhaler dropped from his shirt pocket into the scalding liquid. An explosion occurred, and Exum was burned and scarred on his face, neck, and chest.

Exum brought suit in the District Court of the District of Columbia against GE and Wendy's (which is not a party to this appeal). GE responded to Exum's interrogatories after the court granted a motion to compel, and its responses were, in Exum's opinion, evasive and incomplete. Exum moved for sanctions under Federal Rule of Civil Procedure 37(d), but the trial court denied the motion.

The premise of Exum's negligent design theory was that the Model 811 is an obviously and unreasonably dangerous machine. At trial, Exum hoped to show that the company was unreasonable to market an industrial french fryer requiring the use of two open pans when a safer fryer with a closed filtration system could have been created by installing an inexpensive manual siphon. In support of this theory, Exum sought to introduce evidence of other cases in which young employees of Wendy's had been burned seriously while filtering grease with the Model 811. The trial court first made a tentative decision to admit evidence of these other incidents, but ultimately it excluded the evidence. The court reasoned that all but one of the other cases were not sufficiently similar to Mr. Exum's to be relevant, because they did not involve an employee's accidentally dropping an object into the grease. The court excluded the remaining case on the rationale that because it occurred after Exum's accident, it could not be used to show either notice or dangerousness.

Exum also sought to introduce the expert testimony of a Mr. Stanley Kalin, a registered professional engineer who had experience with occupational injuries and issues of safety and health. Exum intended to use Mr. Kalin to demonstrate that there were feasible and economical alternatives to GE's open-pan system. This testimony would have tended to show that the Model 811 is unreasonably dangerous. The court, however, decided that Kalin was not qualified to testify because he had no experience with kitchen equipment, including french fryers, found in fast food restaurants such as Wendy's.

The court did permit Exum to introduce a blueprint of an inexpensive manual siphon marketed by GE and to read into evidence answers to interrogatories indicating that the siphon cost under $100. Exum argued that this evidence, combined with his own testimony concerning his injuries, presented a jury question on the issue of negligent design even without the excluded evidence. The court disagreed and granted GE's motion for a directed verdict. This appeal followed.

## II. DISCUSSION

Exum raises four issues on appeal. First, he argues the court should have admitted the evidence of other injuries involving the Model 811. Second, he challenges the trial court's exclusion of Mr. Kalin's expert testimony. Third, he contends that notwithstanding the challenged evidentiary

rulings, he presented sufficient evidence to compel the court to send the case to the jury. Finally, Exum claims the trial court abused its discretion in not imposing sanctions against GE for its alleged nonresponsiveness to interrogatories.

Appellant's first three claims are in our view related. The merit of each depends on whether appellant's negligent design theory had a sound basis in the law of the District of Columbia. As we have noted, appellant's theory was that the Model 811 is unreasonably dangerous in light of feasible available alternatives—specifically, a siphon that would have converted the fryer into a closed system—and that the dangerousness of the model was a substantial factor in the injury. A review of applicable precedent makes it clear that this theory of recovery was well-founded. In *Turner v. American Motors General Corp.*, 392 A.2d 1005 (D.C.App.1978), the District of Columbia Court of Appeals reversed the trial court's grant of summary judgment to the defendant in a negligent design suit. The plaintiff alleged the manufacturer was negligent for failing to install a pole or seat handle for bus passengers to grasp when standing to reach the bell cord. The court wrote,

> [A] manufacturer of a chattel is ordinarily subject to liability for injuries to others expected to use the chattel when the injuries are caused by the lack of reasonable care in adopting a safe plan or design. This duty of care in a manufacturer's design has been held to include the use of reasonable safety devices.

*Id.* at 1007 (citations omitted). The court also rejected the defendants' claim for summary judgment based on the plaintiff's alleged contributory negligence. The court stressed that such questions of fact should normally be left to the jury.

The D.C. Court of Appeals elaborated District law on negligent design in *Westinghouse Electric Corp. v. Nutt*, 407 A.2d 606 (D.C.App.1979). The court endorsed a "danger-utility test" for determining whether a particular product poses unreasonable danger in light of available alternatives. *See* W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* 699 (5th ed. 1984). The court explained, "[w]hat constitutes 'reasonable care' will vary with the circumstances, and involves 'a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of precaution which would be effective to avoid the harm.'" *Id.* at 610 (quoting 2 Harper & James, *The Law of Torts* § 28.4, at 1542 (1956)). *Accord Knippen v. Ford Motor Co.*, 546 F.2d 993, 999 (D.C.Cir.1976). *See also* District of Columbia Standard Jury Instructions, No. 11–12 (explicitly adopting the *Westinghouse Electric* language in its jury charge for negligent design); *Prosser & Keeton, supra,* at 688. The court further noted that "[a] finding of unreasonable danger most often turns on the absence of a safety device that was available at the time of manufacture." *Westinghouse Electric*, 407 A.2d at 611.

■ Applying these established principles to this case, we conclude that Mr. Exum presented a jury question as to whether GE failed to exercise reasonable care in its design and marketing of the Model 811. Although Exum was stymied in his efforts to introduce expert testimony and evidence of other accidents with the Model 811, he was able to bring certain key bits of evidence to the jury's attention. First, the court permitted Exum to introduce a blueprint of a siphon that could have converted the Model 811 into a closed, and therefore safer, system. Second, the court permitted plaintiff's counsel to read into the record GE's answers to interrogatories in which the company admitted it designed and marketed the siphon and indicated it believed the siphon sold for under $100.

Armed with this knowledge, and aware of the circumstances of Exum's injury, a reasonable jury could have found GE negligent. First, the jury would have had to inquire whether it was unreasonable for the company not to spend the extra money to install a manual siphon, given the gravity and apparent likelihood of harm arising from an open system. GE argues on appeal that evidence of available design alter-

natives is irrelevant to the question of dangerousness. GE's position appears to be that the possibility of an accident such as Exum's was too remote to have figured in the company's calculations. This argument misconstrues the law that applies in negligent design cases. To find GE had acted unreasonably, the jury would not have to determine that. Exum's injury was foreseeable in all its particulars; rather, it would have to find that a reasonable manufacturer, seeking to minimize many classes of harms including injuries like that to Exum, would have opted to install the siphon. As Exum's counsel pointed out in resisting GE's motion for a directed verdict, "It doesn't matter whether General Electric had any knowledge that Reginald Exum, or anybody, was going to drop an asthma inhaler. What we are talking about is a dangerous system, a dangerous design.... [A] reasonable manufacturer ... wouldn't manufacture something like that. They would provide an alternative system that is readily available." Tr. 165. The court apparently rejected this argument, but we find it is an accurate account of the law. *See Prosser & Keeton, supra,* at 699 ("Under this [danger-utility] test, a product can be said to be defective in the kind of way that makes it 'unreasonably dangerous' if a reasonable person would conclude that the danger-in-fact, whether foreseeable or not, outweighs the utility of the product.") Under this standard, a reasonable jury certainly could have found that it was unreasonable of GE to market the Model 811 as an open system.

Exum could not have prevailed merely by convincing the jury that GE had acted unreasonably. The jury also would have had to determine that the negligent design of the Model 811 was the proximate cause of Exum's injuries. Under District of Columbia law, the jury would have to have found that the negligent design played a substantial part in bringing about the injury and the injury was either a direct result or a reasonably probable consequence of the design. *See* District of Columbia Standard Jury Instructions, No. 5–11. GE vigorously contested the causation issue. In its answer to Exum's complaint, GE averred

that Exum's dropping the inhaler was an unforeseeable and contributorily negligent act that broke the chain of causation. However, the arguments to the trial court on GE's motion for a directed verdict focused on the issue of dangerousness, so the court's decision does not appear to have relied on the issue of causation. Even if it had, we would be constrained to reverse. We must assume that a reasonable juror could well have concluded that the design of the Model 811 was a substantial factor in Exum's injuries and that Exum had not been contributorily negligent; these are "factual issues which cannot be decided as matters of law." *See Turner, supra,* 392 A.2d at 1008. We therefore conclude that the directed verdict was inappropriate.

Our analysis of District of Columbia law also leads us to disagree with the trial court's evidentiary rulings. Exum offered about 15 case files detailing incidents in which young employees were burned while filtering grease with the Model 811. In one of the cases, the victim, like Exum, had dropped an object in the grease; the other incidents involved slightly different and sundry fact patterns—for example, spillages.

Exum argued that the evidence was admissible on either of two theories. First, the other incidents tended to show that the model 811 is dangerous. Second, the incidents put GE on notice of the dangerousness of its design. The trial court found that the prior incidents were not relevant under either theory. We may reverse that ruling only for abuse of discretion. *See U.S. v. Carter,* 522 F.2d 666, 685 (D.C.Cir. 1975).

■ In appraising the relevancy of similar incidents in product liability cases, courts have required the other incidents to be "substantially similar" to the case at bar. *See, e.g., Edwards v. Consolidated Rail Corp.,* 567 F.Supp. 1087, 1105–07 (D.D.C.1983). How substantial the similarity must be is in part a function of the proponent's theory of proof. "If dangerousness is the issue, a high degree of similarity will be essential. On the other hand, if the accident is offered to prove notice, a

lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant." 1 Weinstein & Berger, *Weinstein's Evidence* § 401[10], at 401–66–67.

■ There is without doubt a high degree of similarity between Exum's case and the incident in which a Wendy's employee was injured by dropping an object into the hot grease in the Model 811. In fact, the court excluded that case not on substantial similarity grounds but because it occurred after June 10, 1983, the date of Exum's accident. However, although subsequent incidents cannot be introduced to prove the manufacturer had notice, they are relevant to show dangerousness. *Kanelos v. Kettler*, 406 F.2d 951, 956 n. 30; *see* D. Louisell and C. Mueller, *Federal Evidence* § 98, at 725 n. 3 (1977). It therefore was an abuse of discretion not to admit evidence of this particular incident.

■ The other incidents appear relevant to show both dangerousness and notice. In order to determine whether the Model 811 was negligently designed and marketed, a jury would have to balance " 'the likelihood of harm, and the gravity of harm if it happens, against the burden of precaution which would be effective to avoid the harm.' " *Westinghouse Electric, supra*, 407 A.2d at 610 (quoting 2 Harper & James, *The Law of Torts* § 28.4, at 1542 (1956)). The similar incidents could have aided the jury in its calculations of one side of the balance—the likelihood and the gravity of harm arising from the use of the Model 811. *Cf. Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385 (5th Cir.1980) (admission of evidence of prior train collisions; fact that they occurred at different times in the day and involved cars going in the opposite direction were factors going to the weight of the evidence); *Kehm v. Proctor & Gamble Mfg. Co.*, 724 F.2d 613 (8th Cir.1983) (evidence of consumer complaints held relevant to show dangerousness of tampon over manufacturer's objection that the complaints didn't refer to symptoms of toxic shock syndrome). Since the incidents are admissible on a dangerousness theory, they are, *a fortiori*, also admissible under a theory of notice, which imposes a less rigorous requirement of similarity. Certainly these other accidents were "of a kind which should have served to warn" GE of the risks of an open system fryer. 1 *Weinstein's Evidence, supra*, § 401[10] at 401–62. We therefore find that the district court abused its discretion in failing to admit evidence of these accidents as well.

The district court also erred in excluding the expert testimony of Mr. Kalin. Admission of experts is governed by Federal Rule of Evidence 702, which prescribes a two-part test. First, the witness must be qualified; i.e., he must have "knowledge, skill, experience, training, or education" in the field. Second, the witness's testimony must be able to assist the trier of fact. In this case, the court relied on the first prong of the Rule 702 test. It found Kalin unqualified to testify, because Kalin had no specific expertise in kitchen design and had never examined a kitchen of a fast food restaurant.

■ The flaw in the district court's decision is that it relied on an overly pinched application of the qualification prong of Rule 702. The rule does not require the expert to have personal familiarity with the subject of his testimony; "experience" is only one among the five different ways to demonstrate an expert is qualified. *See Garrett v. DESA Industries*, 705 F.2d 721, 724 (4th Cir.1983) (reversible error to exclude an expert witness "simply because he lacked one of the five qualifications, namely, prior experience with stud drivers. [The expert] was qualified by his education, knowledge, training, and skill as a holder of a Masters degree in mechanical engineering, professional engineer, and gunnery officer."); *Martin v. Fleissner Gmbh*, 741 F.2d 61 (4th Cir.1984) (upholding admission of testimony of experts knowledgeable in pertinent areas of engineering design although unfamiliar with the particular product at issue).

■ In this case, Kalin is amply qualified as an expert witness. He is a registered engineer who has worked at OSHA and the

Institute of Safety Analysis. He has considerable experience with issues of industrial safety and product design and has testified as an expert in several other defective design cases. Kalin's engineering background and special expertise in the area of safe industrial design are more than adequate credentials under Rule 702.

Moreover, Kalin's training enables him to provide testimony that would aid the jury. *See Jenkins v. U.S.*, 307 F.2d 637 (D.C.Cir. 1962) (en banc). His testimony thus passes the second prong of the Rule 702 test. Since Exum's allegations of defective design focus on the open filtration system (and alternatives to it), Mr. Kalin's expertise could be helpful whether or not he knows precisely how the Model 811 performs in frying potatoes of Wendy's. Mr. Kalin stands ready to describe the probable expense and effectiveness of installing a manual siphon on the Model 811. These are matters which a reasonable manufacturer would have weighed in deciding whether to market the Model 811 without a siphon. They therefore are highly relevant considerations for a jury attempting to determine whether GE discharged its duty of reasonable care. *See Westinghouse Electric, supra*, 407 A.2d at 611. ("To show lack of due care, expert testimony is admissible regarding the nature and feasibility of safeguards and precautions which could have been taken.")

■ There remains Exum's challenge to the court's refusal to impose sanctions during discovery. We have little difficulty disposing of this claim. Federal Rule of Civil Procedure 37 gives a trial court broad discretion to respond, or not to respond, to alleged abuses of the discovery process. C. Wright & A. Miller, *Federal Practice and Procedure* § 2284, at 764–72 (1970). A court's decision not to issue sanctions may be overturned on appeal only for abuse of this discretion. *See National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976). Exum argues that the trial court should have imposed sanctions because GE's answers to his interrogatories were evasive or incomplete. The company claims that it was unable to respond in greater detail because it no longer had access to certain records as a result of a previous corporate transfer. The court apparently credited this explanation and determined that sanctions would not be appropriate. The record is devoid of any evidence of willful misconduct by GE, and we have no reason to upset the trial court's sound exercise of discretion in this matter.

CONCLUSION

Appellant relied on an appropriate theory of negligent design under District of Columbia law, and the evidence he adduced at trial was sufficient to present a jury question on GE's liability. In addition, at least some of the evidence of similar incidents should have been admitted on the questions of the fryer's dangerousness and the company's notice, while the expert testimony should have been admitted on the question of the feasibility of an alternative design. However, the district court did not abuse its discretion in denying Exum's request for sanctions against GE for the company's conduct during discovery. For the foregoing reasons, the order of the district court granting GE's motion for a directed verdict is reversed, and this matter is remanded for proceedings consistent with this opinion.

*It is so ordered.*