**Bobby M. PONDER, Plaintiff–Appellant,**

v.

**WARREN TOOL CORPORATION and Patch Rubber Company, Defendants–Appellees.**

**No. 83–2466.**

United States Court of Appeals, Tenth Circuit.

Dec. 10, 1987.

---

Ronald N. Gott, Wichita, Kan. (Paul S. McCausland and Kenneth M. Clark, Gott, Young & Bogle, P.A., Wichita, Kan., were also on briefs), for plaintiff-appellant.

Richard D. Ewy, Wichita, Kan. (Jerry G. Elliott, Foulston, Siefkin, Powers & Eberhardt, Wichita, Kan., was also on briefs), for defendants-appellees.

Before HOLLOWAY, Chief Judge, BARRETT, Circuit Judge, and GREENE, District Judge [*].

HOLLOWAY, Chief Judge.

This is a diversity products liability action asserting negligence and strict liability theories to recover for injuries plaintiff Ponder suffered as a result of the explosion of a tire he was trying to mount using a bead seater manufactured by defendant Patch Rubber Company and marketed by defendant Warren Tool Company. Ponder appeals from a judgment on a jury verdict in favor of Patch. We reverse.

## I.

On December 17, 1979, the date of the accident in question, Ponder owned and operated an automobile body shop and also worked on cars at his home, in Wichita, Kansas. As part of his business, he frequently had to mount tires. An important part of the mounting process is the proper seating of the beads of the tire onto the inside of the wheel rim flanges to form an airtight seal so the tire will inflate properly.

To assist in seating radial tires Ponder purchased a Ken-Tool Model 31435 Bead Seater in 1975 or 1976. The bead seater was manufactured and packaged by Patch and marketed by Warren Tool. The Ken-Tool bead seater consisted of a looped tube of rubber which fit between the bead of the tire and the inside flange of the rim. As the tire inflated, the air pressure in the tire forced the bead seater up and over the rim, leaving the tire bead properly seated on the rim. To slide on and off the rim properly, the bead seater had to be properly lubricated with a lubricant recommended by the tire manufacturer. The bead seater was advertised as suitable for use on thirteen, fourteen and fifteen inch wheels.

Although Ponder had originally intended to purchase a bead seater which went around the outside of the tread of the tire, a Wichita automotive distributor recommended the Ken-Tool bead seater as the most effective in seating radial tires. On the distributor's advice Ponder purchased the Ken-Tool bead seater. Ponder also bought a water-based lubricant known as Ru-Glyde, which he used with the bead seater at all times including the date of the accident.

Ponder testified at trial that he did not recall whether the bead seater came with any instructions. His testimony on wheth-

* The Honorable J. Thomas Greene, United States District Judge for the District of Utah, sitting by designation.

er he would have read any instructions accompanying the product is conflicting. Before the accident, Ponder used the bead seater forty to fifty times without any problems. He also used a tire machine connected to an air compressor to help him mount and demount tires. The machine was equipped with a locking cone to secure wheels on the machine during the mounting and demounting process, and Ponder inflated tires by using an air hose and chuck.

On the day of the accident, Ponder and his cousin, Louis Hickman, removed two wheels from Ponder's pickup truck at his body shop and took them to Ponder's home so Ponder could replace the tires with two used snow tires he had bought. After demounting one of the old tires from its rim, which was secured to the tire machine by the locking cone, Ponder lubricated the tire beads with Ru-Glyde and worked the tire onto the rim. He removed the locking cone, turned the wheel over, replaced the locking cone and put the bead seater on. II R. 158–160.

Ponder attempted three times to seat the new tire. On the first attempt, he lubricated the rim flange and the tire bead by pouring Ru-Glyde "over the bead seater." When the bead failed to seal, however, he relubricated the flange and the bead and tried again. He positioned the tire so the bead seater was on the bottom side of the wheel, opposite the side with the valve stem, removed the locking cone, and put air in the tire. II R. 161–64. When Ponder inflated the tire, however, the bead seater refused to slip out from around the wheel. On the third try, the tire exploded. II R. 165–168, 170. The explosion propelled the tire upward and blew Ponder back several feet, virtually severing his hand from his arm.

Ponder brought this suit against Warren Tool and later joined Patch. In the pretrial conference order, Ponder stated he was making no specific claims against Warren Tool. Instead, he reserved his claim against that defendant in the event Patch asserted Warren Tool's comparative negligence as a defense. Against Patch, Ponder

alleged defects in the design and manufacture of the bead seater, failure to warn, and negligence. Patch denied that the bead seater was defective and contended that Ponder misused the bead seater.

After a six day trial, the jury returned a general verdict for Patch, and the court granted a motion by Warren Tool for a directed verdict. Ponder filed a motion for a new trial in which he raised the arguments he now makes on appeal. The trial judge overruled the motion, and this timely appeal followed.

On appeal, Ponder argues that (1) the trial court erred in limiting testimony by Ponder's two expert witnesses concerning the cause of the accident, alternative safe designs, and latent dangers in the bead seater; (2) the court erred in refusing to admit evidence of other similar accidents; and (3) the trial court erred in refusing to admit testimony concerning Ponder's reputation for truthfulness and honesty. We deal with these contentions in turn.

## II.

Ponder's first claim of error relates to expert testimony by two witnesses: Lyle Brumbaugh, a tire-changer, assistant manager and sales manager for a tire shop; and Neal Robinson, a materials and failure analysis engineer. Ponder says that the trial court improperly limited testimony by these witnesses on three subjects: awareness of hazards associated with use of the bead seater; the cause of the accident; and alternative products available to mount tires.

### 1. The Cause of the Accident and Users' Awareness of Hazards

Ponder contends that the trial court erroneously limited testimony by his expert witness, Robinson. Ponder points to two instances where the judge would not allow Robinson to testify, first about the cause of the accident, and second about the hazards of using a bead seater.

 On the first point, Robinson testified that the bead seater tended to become trapped. This characteristic, he suggested,

could cause an employee to inadvertently overinflate a tire:

> My opinion as to ... the cause of the accident, was that ... at the time of the accident the bead seater became trapped and did not disengage at the pressures that previous experience had indicated, and that, therefore, under these circumstances, it's possible to inflate the tire to higher than normal pressures without realizing it.

III R. 385. Patch immediately objected to Robinson's statement as "totally speculative, conjectural and ... assuming things not in evidence." III R. 385. The trial judge sustained the objection and instructed the jury to disregard the answer because "[i]t's not taking into account the evidence in this case." III R. 385.

The trial court's ruling—that Robinson's testimony was inadmissible because it took into account evidence not in the case—was in error and in conflict with Fed.R.Evid. 703. The Rule states that "[t]he facts or data upon which an expert bases an opinion or inference, ... [i]f of a type reasonably relied upon by experts in the particular field, ... need not be admissible in evidence." Fed.R.Evid. 703. Indeed, there are three ways an expert can learn facts on which he bases his opinion:

> First, the expert may gather information by means of firsthand observation. Second, the expert may base his or her testimony upon facts presented at trial, either in the form of hypothetical questions propounded by counsel or evidence before the court. Third, the expert may rely on facts outside the record and not personally observed, but of the kind that experts in his or her field reasonably rely in forming opinions.

*Ramsey v. Culpepper*, 738 F.2d 1092, 1101 (10th Cir.1984) (emphasis omitted). *Accord Mannino v. International Mfg. Co.*, 650 F.2d 846, 852 (6th Cir.1981).

In the present case, Robinson's testimony was based both on first hand observa-

tion, and upon information "of a type reasonably relied upon by the experts in the particular field." Fed.R.Evid. 703. At the beginning of his testimony, Robinson stated that he examined the wheel rim, the tire, and the bead seater "in order to determine how the accident occurred and the causes." III R. 343. He also examined the physical evidence under an optical microscope, and took x-rays of the tire's beads. In addition, he was informed of the circumstances of the accident and of the result of the accident. On the basis of his professional credentials, the investigation he conducted, and statements to him about the circumstances of the accident, Robinson was clearly qualified to express his opinion on the cause of the accident, and the trial judge did not find otherwise.

■ Further, Robinson's testimony was admissible even though it expressed his opinion on the cause of the accident. "Testimony in the form of an opinion ... otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Fed.R.Evid. 704; *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir.1987). *See also Dickerson v. Shepard Warner Elevator Co.*, 287 F.2d 255, 260 (6th Cir.1961) ("[A] witness experienced in technical matters and qualified to do so, may give his opinion as to the cause of a matter even though it may involve an ultimate fact to be finally decided by the jury."). Consequently, we conclude that the trial court's refusal to allow Robinson's testimony on the cause of the accident was an abuse of discretion.

■ Second, the trial court's *initial* refusal to permit Robinson to testify about the potential hazards of the bead seater, and about the adequacy of its instructions, was however not an abuse of discretion. Because Ponder had failed to lay the proper foundation establishing Robinson's expertise in the area of warnings, the court's initial ruling was proper. Later, a proper foundation was laid,[1] and the court allowed

---

1. After the bench conference, Ponder sought to lay a foundation for Robinson's testimony on the adequacy of the warnings accompanying the bead seater. In response to questions by Pon-

der, Robinson testified that he had reviewed virtually all of the literature dealing with effectiveness of warnings on consumer products; that he had read a considerable amount of the

Robinson to testify that the instructions accompanying the bead seater were inadequate because they did not explain certain hazards associated with the bead seater and did not say untrained individuals should not use the bead seater. On retrial, the trial judge should again permit the introduction of Robinson's testimony on the inadequacy of the warnings if the proper foundation is laid, along with Robinson's testimony on the cause of the accident which should have been admitted.

■ Ponder also complains that the trial court refused to allow Brumbaugh to testify about the number of employees he trained who were unaware of the hazards involved with bead breaks on tires caused by overinflation. Appellant's Brief at 15. This testimony, Ponder argues, was necessary to show the existence of a latent defect "that's not understood by the person off of the street and not even understood by people who have worked with tires if they haven't had formal training...." III R. 271.

During Brumbaugh's testimony, Ponder asked Brumbaugh to estimate the percentage of new employees he trained who had knowlege of the hazards associated with bead breaks on tires. Patch objected on the ground the information was not relevant, and the court sustained the objection. III R. 270. At a bench conference, Ponder argued that the testimony was relevant to show that a bead break was not an obvious hazard even to people familiar with tires. In addition, Ponder claimed the testimony was relevant to issues of design defect and failure to warn. III R. 271. In opposition, Patch argued that because Ponder was experienced in tire repair, evidence of the awareness of new employees about the hazards of bead breaks was irrelevant. Patch said that Ponder himself had admitted in his testimony "that he understood about tire explosions and inflating tires...." III R. 271. The trial court sustained Patch's objection, noting that since

there was no evidence of any bead breaks in this case,—the evidence showed only that the tire blew up—there was no foundation for Brumbaugh's testimony. III R. 272–73.

The following morning, Ponder made his offer of proof on Brumbaugh's testimony on this issue, stating that Brumbaugh would have testified that 70 percent of the new people who came to him for training were unaware of the hazards associated with bead breaks. III R. 403. The trial court responded:

> As to ... attempting to show that a trainee or a layman of sorts may not be fully mindful of some of [the bead seater's dangerous] propensities ... I had no problem with permitting you to go that way. I was having a problem ... as to the way you went at it.... [Y]ou didn't lay a foundation for it. ... You went back and straightened it out I think. I don't believe you're prejudiced at this point in the inability to demonstrate a layman's perception, if there's one, but my concern was ... the foundation that had been established or the absence of it at that time [we] got into it. When there [was] an objection made I sustained it. I think you got it straightened out; *at least if you didn't you're welcome to try again.*

III R. 408 (emphasis added). Despite the court's invitation to Ponder to "try again," however, Ponder declined to recall Brumbaugh.

In sum, from the trial judge's statement he apparently recognized both the relevance and, ultimately, the admissibility of Brumbaugh's testimony on this issue. Indeed, the record indicates that the evidence was not presented only because Ponder declined to recall Brumbaugh. Consequently, any complaint of error by Ponder became moot. Of course, we assume that on remand the trial court will again permit Brumbaugh's testimony to be offered on this issue.

literature on "instructions and effects of safety attitudes in industries and accident rates in industry and similar literature," III R. 396; that he had published a technical paper on warnings;

and that he had served as a consultant to companies on the appropriateness of their warnings on consumer products.

## 2. Alternative Products

 Ponder argues that the trial judge erroneously precluded Robinson from testifying about the relative safety of Patch's bead seater in comparison to other devices on the ground the testimony was not relevant. We agree. The existence of safer alternative designs is relevant under both Kansas and federal law on the question whether a product is defective. *See, e.g., Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1457 (10th Cir.1987); *Mahoney v. Roper-Wright Mfg. Co.,* 490 F.2d 229, 232 (7th Cir.1973); *Siruta v. Hesston Corp.,* 232 Kan. 654, 659 P.2d 799, 808 (1983); *Betts v. General Motors Corps.,* 236 Kan. 108, 689 P.2d 795, 801 (1984). Moreover, Robinson's testimony was not excluded because he lacked the qualifications to testify about the relative safety of the alternatively designed bead seaters. In fact, Robinson's qualifications were substantial and were not rejected by the judge. Consequently, the exclusion of testimony by Robinson on this issue was clearly in error.

 Ponder also says that the judge erred in rejecting Brumbaugh's testimony on the relative merits of alternatively designed bead seaters as irrelevant.[2] As noted, under both Kansas law and federal law evidence of a safer alternative design may be used to show that a product is defectively designed. However, any error a trial court may make in stating his ground for excluding evidence is harmless as long as "the evidence is excludable on some other ground." *United Telecommunications, Inc. v. American Television & Communications Co.,* 536 F.2d 1310, 1318 n. 6 (10th Cir.1976). On this proffer, the trial judge's ruling was also based on his view that Brumbaugh was not qualified to express such an opinion. IV R. 637. We cannot say that this ruling was in error.

In sum, there was prejudicial error in rejecting Robinson's testimony on the relative safety of alternatively designed bead

seaters, although the exclusion of Brumbaugh's testing on this point was not reversible error.

## III.

Ponder's next argument on appeal is that the trial court erred in refusing to allow him to introduce evidence of other accidents involving the same bead seater. At trial, Ponder asked Patch's General Manager whether he had any knowledge of "other accidents with this model bead seater that involved its use in a tire explosion." IV R. 516. Patch objected, and the trial court sustained the objection.

 The next day, Ponder offered evidence concerning two other accidents. The evidence concerning the first accident consisted of a packet of letters in which the President of Meyers Industries, Patch's distributor, related the events surrounding the case of *Clarence Lee v. Meyers Industries.* According to the letter, the plaintiff in that case "was injured when a tire he was inflating 'exploded,' striking him on the arm and shoulder." I R. 157. "The explosion occurred," the letter continued, "while the plaintiff was attempting to inflate a GENERAL tire and was using a Temco bead expander." I R. 157. The case was eventually settled for $75,000 after a jury verdict for $100,000 against Meyers was reversed on appeal. I R. 157; IV R. 523–24. The trial judge rejected Ponder's proffer on the dual grounds that the letters would be "grossly confusing and perhaps prejudicial"; and because they failed to show anything beyond the fact that Patch's parent company had been sued. IV R. 524. We find no error in this ruling.

 The evidence of the second accident proffered by Ponder consisted of the complaint in *Morales v. Firestone Tire & Rubber Co.* According to the complaint, the

---

**2.** At trial Brumbaugh testified that alternative devices were available for seating beads in 1976. He discussed three types of device: a jet-action device which attaches to the tire machine, a pneumatic belt inflating machine which goes around the outside of the tire, and a third type

called a "bead-up," III R. 293–94, which he did not describe. However, the trial judge refused to allow Brumbaugh to testify about the relative merits and safety of the other products on the ground that the testimony was not relevant.

plaintiff in *Morales* was inflating a tire made by a division of Firestone, "and properly using an o-ring bead seater manufactured by PATCH RUBBER COMPANY," 1 R. 228, when the tire exploded, seriously injuring him. After reviewing the complaint, the court refused to admit the evidence because Ponder had failed to prove the cases were substantially similar.

"[E]vidence of similar accidents involving the same product is admissible under both Kansas strict products liability law and federal law to establish 'notice, the existence of a defect, or to refute testimony given by a defense witness that a given product was designed without safety hazards.'" *Johnson v. Colt Indus. Operating Corp.*, 797 F.2d 1530, 1534 (10th Cir.1986), (quoting *Rexrode v. American Laundry Press Co.*, 674 F.2d 826, 829 n. 9 (10th Cir.), *cert. denied*, 459 U.S. 862, 103 S.Ct. 137, 74 L.Ed.2d 117 (1982)). *Accord Jackson v. Firestone Tire & Rubber Co.*, 788 F.2d 1070, 1082 (5th Cir.1986); *Brooks v. Crysler Corp.*, 786 F.2d 1191, 1195 (D.C.Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 185, 93 L.Ed.2d 119 (1986); *Borden, Inc. v. Florida E. Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir.1985). Generally, however, admission of evidence "regarding prior accidents or complaints is 'predicated upon a showing that the circumstances surrounding them were substantially similar to those involved in the present case.'" *Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1460 (10th Cir.1987). *Accord Exum v. General Elec. Co.*, 819 F.2d 1158, 1162 (D.C.Cir.1987); *Johnson*, 797 F.2d at 1534; *Brooks*, 786 F.2d at 1195.

In determining whether accidents are "substantially similar," the factors to be considered are those that relate to the particular theory underlying the case. Differences in the nature of the defect alleged may affect a determination whether the accidents are substantially similar. *See, e.g., Jackson*, 788 F.2d at 1083 ("The 'substantially similar' predicate for the proof of similar accidents is defined ... by the defect ... at issue."). Moreover, "[h]ow substantial the similarity must be is in part a function of the proponent's theory of proof." *Exum*, 819 F.2d at 1162. "If dangerousness is the issue, a high degree of similarity will be essential.... If the accident is offered to prove notice, a lack of exact similarity of conditions will not cause exclusion provided the accident was of a kind which should have served to warn the defendant." *Id.* at 1162–63, *quoting* 1 J. Weinstein & M. Berger, *Weinstein's Evidence* § 401[10], at 401–66–67 (1987).[3] When evidence of other accidents is used to prove notice or awareness of a dangerous condition, the rule requiring substantial similarity of those accidents to the one at issue should be relaxed. *Jackson*, 788 F.2d at 1083. Once a court has determined that accidents are substantially similar, "[a]ny differences in the circumstances surrounding those occurrences go merely to the weight to be given the evidence." *Id.*

While the trial judge's perspective on the admissibility of other accidents as evidence of a design defect was, by his own admission, "conservative," IV R. 636, we cannot say that the ruling was an abuse of discretion. Since the claimed defect was the failure of the bead seater to properly disengage, the ruling of dissimilarity was not in error. Despite the superficial factual similarity between the two accidents, we find no error in the ruling that they were not substantially similar.

## IV.

Ponder's final contention is that the trial judge erred when he refused to allow Ponder to present the testimony of two witnesses, O'Bleness and Sweet, who would have both testified that Ponder's reputation in the community for truthfulness and honesty was good. Ponder contends that since Patch attacked his credibility by introducing some of his tax returns, and by forcing Ponder to admit that he

---

**3.** "The typical and preferable method of introducing such evidence is through the testimony of one familiar with the similar accident or the subsequent litigation." *Johnson*, 797 F.2d at 1534 n. 4. Nonetheless, this procedure is not mandatory provided that the evidence proffered by the plaintiff is sufficiently substantial, probative, and reliable.

understated his income in those returns, the trial court should have allowed him to introduce the testimony of O'Bleness and Sweet under Fed.R.Evid. 608. Patch asserts that Ponder introduced the issue during his *voir dire* of the jurors and during his direct testimony. Moreover, Patch says it introduced Ponder's tax records merely to support its defense to his claim for lost wages, and not to impeach his credibility. Brief of Appellee at 8–13.

We feel that Ponder is not entitled to assert this claim of error since he introduced the subjects complained of himself. Thus we need not decide whether Ponder's favorable character evidence would otherwise have been admissible.

### V.

In light of the prejudicial errors discussed earlier in this opinion, the judgment is reversed and the case is remanded for a new trial.