Terri **COLEMAN**

v.

**PARKLINE CORPORATION.**

No. 87–7089.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 5, 1988.

Decided April 22, 1988.

John F. Mahoney, Jr., Washington, D.C., for appellant.

Marc Fiedler, with whom Mark J. Brice and Glenn K. Garnes, Washington, D.C., were on the brief, for appellee.

Before WALD, Chief Judge, STARR, Circuit Judge, and MacKINNON, Senior Circuit Judge.

Opinion for the Court filed by Senior Circuit Judge MacKINNON.

MacKINNON, Senior Circuit Judge:

Appellant, Parkline Corporation ("Parkline"), appeals from a district court decision in which a jury found Parkline negligent and liable for injuries sustained by Terri Coleman ("Coleman"). Parkline contends, first, that the trial judge erroneously admitted the expert testimony of a safety engineer who testified for Coleman; and, second, that the trial court erred in refusing to give a jury instruction on contributory negligence. In our opinion, (1) the admission of the testimony of Coleman's expert witness was a proper exercise of the trial court's discretion and (2) the evidence did not require an instruction on contributory negligence. *Coleman v. Parkline Corp.*, No. 86–0912 (D.D.C. April 14, 1987). We affirm.

## I. BACKGROUND

Parkline is a manufacturer of custom elevator cab interiors, whose employees pack elevator cabs into its trucks for delivery and whose drivers tie down the parts to hold them in place in transit. Elevator ceilings, or "domes," are loaded into the trucks first. Then elevator doors, walls, a package containing a fan, emergency lights and other items, and sills are loaded. The domes are approximately four feet long, six feet wide, and weigh between five and seven hundred pounds. The side of the dome that faces the interior of the cab is finished with a bronze or mirrored surface. Welded to each corner of the unfinished side are L-shaped metal brackets (angle irons) that have a hole wide enough for a rope to pass through. In this case Parkline loaded the domes standing upright in the truck, as was customary. The domes are top-heavy and since they have a tendency to fall towards the finished side, they are secured with ropes run through the angle irons on the domes and tied to the slat boards on the side walls of the trucks. They are *not* secured to the front of the interior of the truck. There was testimony that Parkline employees had tied the domes the same way for at least fourteen years. The domes are tied down as a unit.[1] Park-

---

1. There were some inconsistencies, which were for the jury to resolve, between the various witnesses' testimony as to how the domes were secured. There are several statements that the domes were tied together as a unit. Transcript ("Tr.") I, 82 (traffic manager Hunker states that the domes were tied "[a]ll three together."); Tr. I, 128 (job foreman Wright infers that domes were together, saying "I saw three domes. I saw one rope."); Tr. III, 23 (Hunker testifies that "[w]hen the third one is in place, we have the same thing, tissue paper, bubble-wrap, blankets, extra blankets, and then we tie it across."); Tr. III, 25 (Hunker agrees that "[t]he whole unit of the three of them are tied right against the foremost part of the truck."). There are also several statements to the effect that each dome was tied individually. Tr. I, 98 (mechanic Dwyer testified that the domes are "usually" tied down individually.); Tr. I, 109 (Wright agrees

line claims that the domes cannot be tied individually because they would get scratched. The domes are loaded facing in different directions so that they fit together as a unit which can be pushed against the front interior wall of the truck. Three ropes are strung across the top, middle and bottom of the domes as a unit. Generally, Parkline's drivers untie the loads and monitor the unloading, although sometimes the recipient of the shipment unties the loads. In this case, the employees of the consignee, Otis Elevator Company, unloaded the truck.

On the morning of October 29, 1985, Parkline delivered the parts for three elevator cab interiors to Otis Elevator Company ("Otis"). Otis employees Benjamin Wright, a job foreman, Russ Dwyer, a mechanic, and Terri Coleman, a construction helper, were on the truck unloading it. While moving one of the domes, a second dome fell over onto Coleman, pinning her to the floor. The sharp edge of the finished surface of the dome sliced her leg. She suffered injuries to her knee, legs, back, ribs and shoulder and as a result cannot return to work in the construction industry.

The jury awarded Coleman $300,000 against Parkline. Parkline filed a motion to set aside the verdict and judgment, to enter a judgment for the defendant notwithstanding the verdict, or alternatively for a new trial. Parkline appeals the trial court's denial of these motions. Our jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332.

## II. ANALYSIS

### A. Expert Witness

■ Parkline argues that the trial judge erroneously admitted the testimony of Stanley R. Kalin, a safety engineer who testified for Coleman. Kalin gave his expert opinion as to the dangers involved in the manner that Parkline tied the domes, the need to provide warnings and the availability of economically feasible alternative methods of properly securing the domes.

The Federal Rules of Evidence provide: If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. This court has recognized that Rule 702 "prescribes a two part test. First, the witness must be qualified; i.e., he must have 'knowledge, skill, experience, training, or education' in the field. Second, the witness's testimony must be able to assist the trier of fact." *Exum v. General Electric Co.*, 819 F.2d 1158, 1163 (D.C.Cir. 1987) (admitting testimony of Kalin, same expert as in this case, giving opinion that fast food french fryer was dangerous); *Beins v. United States*, 695 F.2d 591, 609 (D.C.Cir.1982) (Rule 702 "lays down a two-part test for the admissibility of expert testimony: the witness must be qualified and he must be capable of assisting the trier of fact."); *Larsen v. International Business Machines Corp.*, 87 F.R.D. 602, 607 (E.D.Pa.1980) (Rule 702 "is a codification of existing federal law and embodies two requirements for expert testimony. The first is that the testimony must assist the trier of fact to *understand* the evidence. The second is that the witness must be *qualified* as an expert.").

"The question of whether these conditions have been satisfied is largely committed to trial court discretion.... 'The qualification of a particular witness to testify as an expert is largely within the domain of the trial judge.'" *Beins*, 695 F.2d at 609, quoting *Jenkins v. United States*, 307 F.2d

that the domes were tied down "one by one individually."); Tr. I, 171 (plaintiff Coleman explains that "[a]nything that big would normally be strapped in individually, strapped in against the wall."). Some of the employees who testified that the domes were tied individually may have been referring to how other companies' trucks were loaded and secured. In any event,

Coleman's arguments that Parkline negligently tied the domes assumes that they were tied as a unit rather than individually. Coleman's expert witness testified that the domes were secured "as a unit, all three together." Tr. II, 36. He further testified that Parkline "secured it by using a single constraint around the three domes, and that's improper." *Id.*

637, 645 n. 19 (D.C.Cir.1962) (en banc). The Supreme Court has held that "[t]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962), *quoted in Beins*, 695 F.2d at 609. *Accord Martin v. Fleissner GMBH*, 741 F.2d 61, 64 (4th Cir.1984) ("The qualification of an expert witness is a question which lies within the sound discretion of the trial judge and will not be overturned in the absence of clear abuse.").

The court was within its discretion in admitting Kalin's testimony. Kalin is sufficiently qualified to satisfy the first requirement of Rule 702. He has a degree in engineering and has worked at OSHA and the Institute of Safety Analysis. He has considerable experience in investigating accidents, determining their causes, recommending ways to alleviate their causes, and working on safety aspects of handling loading and unloading heavy, large, industrial materials. It is not necessary that Kalin have experience with loading elevator domes in particular. *Exum*, 819 F.2d at 1163 ("The flaw in the district court's decision is that it relied on an overly pinched application of the qualification prong of Rule 702. The rule does not require the expert to have personal familiarity with the subject of his testimony; 'experience' is only one among the five different ways to demonstrate an expert is qualified."); *Martin*, 741 F.2d at 64 (although "neither witness was an expert on crimpers, both were knowledgeable in the pertinent areas of engineering design and familiar with the process used by a crimper. This lack of direct experience is not a sufficient basis to reject their testimony, but may affect the weight that testimony is given, a decision properly made by the jury.").

The evidence also satisfies the second requirement for the admission of expert testimony under Rule 702. The court did not abuse its discretion in concluding that Kalin could assist the jury's understanding.

The trial court found that Kalin "is an expert in safety, ... and seems to me to be qualified to discuss the loading and securing and unloading of heavy equipment or large articles, whether warehousing or on trucks." Tr. II, 14; Appendix ("App.") 179. Safely loading large industrial objects that weigh over five hundred pounds onto trucks is beyond the common knowledge and experience of the average juror. Kalin assisted the jurors by testifying about OSHA regulations and safety literature concerning safe loading of industrial materials. He explained that Parkline's method of tying the domes created a "booby trap" [2] for people unloading the domes after the ropes were removed. He described economically feasible methods of tying the domes individually. He explained how warnings could have been effectively given.

■ Parkline claims that the judge should have excluded Kalin's testimony as unduly prejudicial under Rule 403 of the Federal Rules of Evidence which provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403. Parkline argues that Kalin's status as an expert and his statement that the way the domes were loaded constituted a "booby trap," would sway the jury to give too much credence to his opinion. We conclude that the court properly exercised its discretion in balancing probative value and prejudice under Rule 403. The judge decided to admit Kalin's testimony after considering the potential undue "emphasis the jury can place on his testimony as to the ultimate issue." Tr. II, 14; App. 179. Before Kalin testified, the judge instructed the jury that Kalin's "opinion should be considered and weighed by you just like any other evidence in this case."

**2.** "Booby trap" is a good description of what happened to cause the injury to Coleman.

Tr. II, 22; App. 183.[3]

## B. *Contributory Negligence*

██ Parkline further argues that the court erred in not giving a jury instruction on contributory negligence. However, Parkline presented no evidence of contributory negligence,[4] had notice before argument that the court did not intend to charge on contributory negligence and made no objection at that time, did not argue contributory negligence to the jury, and first requested such instruction only after the court had charged the jury. (Tr. III, 120). Under such circumstances, an instruction on contributory negligence was not required. Contributory negligence is an affirmative defense on which the defendant has the burden of proof. *Stewart v. Ford Motor Co.*, 553 F.2d 130, 136 n. 6 (D.C. Cir.1977). The court was not required to give the instruction because the defendant had not argued contributory negligence to the jury and the defendant had not developed it sufficiently in the evidence to require a jury instruction. We thus affirm.

*Judgment accordingly.*

---

**3.** Rule 403 limits the cases in which expert testimony is useful and admissible. In *In re: Air Crash Disaster at New Orleans, Louisiana,* 795 F.2d 1230 (5th Cir.1986), the court warned that the standard leaves appellate judges with a considerable task. We will turn to that task with a sharp eye, particularly in those instances, hopefully few, where the record makes it evident that the decision to receive expert testimony was simply tossed off to the jury under a "let it all in" philosophy. *Id.* at 1233. In this case, the decision of the court to admit Kalin's testimony was based on a considered judgment that Kalin could assist the jury.

**4.** Coleman had not untied the domes (Tr. I, 175). They had been untied when she got on the truck (Tr. I, 178), at which time they were obviously standing. The second dome, which later fell, was covered by a furniture blanket which prevented Coleman from seeing that the remaining domes were not tied down (Tr. I, 130).